[No. F040707. Fifth Dist. Apr. 23, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT AGUILAR MORENO, Defendant and Appellant.

**COUNSEL**

Eric Weaver, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson and Jo Graves, Assistant Attorneys General, John G. McLean, Jay A. Mark and Mark A. Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BUCKLEY, J.**—This case requires us to decide whether the trial court, after a criminal judgment has been entered and affirmed on appeal, may order the defendant to reimburse the state for restitution payments it made to the victim's family, even though the original sentence had neglected to make any provision for direct restitution. We conclude on the strength of Penal Code section 1202.46 that it may, and affirm the order.[1]

### BACKGROUND

On March 15, 2000, a jury found Robert Aguilar Moreno guilty of first degree murder (§§ 187, 189). It also found true allegations Moreno had committed the offense for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)); that he had intentionally and personally discharged a firearm in the commission of the offense, causing great bodily injury or death (§ 12022.53, subd. (d)); and that he had personally used a firearm in the commission of the offense (§ 12022.5, former subd. (a)(1)).

On May 26, 2000, the court sentenced Moreno accordingly to an indeterminate term of 25 years to life for the murder, to a consecutive 25-year-to-life term for the firearm great bodily injury enhancement, and to the middle term of two years consecutive for the gang enhancement, for a total of 52 years to life in state prison. The court imposed the middle term of four years for the personal use enhancement, but stayed its execution. (§ 654.)

In addition, the court ordered Moreno to pay a $10,000 restitution fine (§ 1202.4, subd. (b)), and a parole revocation fine in the same amount (§ 1202.45). In the absence of any request, the court did not direct Moreno to pay restitution to the murder victim's family. (§ 1202.4, subd. (f).)

In fact, however, the state Victims of Crime Program (VOC) had paid $4,346.35 to the victim's family a month earlier, on April 21, 2000, for burial expenses the family incurred in March of 1999. Through a combination of circumstances, this information was not relayed to the trial court in time for the sentencing hearing.

The probation report had been filed on April 6 in anticipation of the sentencing hearing originally scheduled for April 13. According to the report, the probation officer had made several unsuccessful attempts to

---

[1]Except as noted, all further statutory citations refer to the Penal Code.

contact the victim's family.[2] The sentencing hearing was continued three times before it finally was held on May 26. The VOC payment was made in the interim between the report and the hearing. Neither the VOC nor the family, it seems, notified the probation officer of the payment.

Moreover, notwithstanding the fact a trial court is required to make provision for victim restitution, the subject did not come up at the sentencing hearing. The court did not retain jurisdiction to make a restitution order in the future, nor did it find "compelling and extraordinary reasons" for not ordering full restitution. (§ 1202.4, subd. (f).)

Moreno filed an appeal challenging the gang enhancement in various respects. In an unpublished opinion filed January 14, 2002, we rejected his claims and affirmed the judgment in its entirety. (*People v. Moreno* (Jan. 14, 2002, F036130).)[3] Again, no mention was made of victim restitution in connection with the appeal. The California Supreme Court denied Moreno's petition for review on March 20, 2002. The remittitur issued from this court on March 29, 2002.

On November 20, 2001, while the appeal was pending, the probation officer asked the trial court for a restitution order directing Moreno to reimburse VOC for the payment it had made to the victim's family in April of 2000. The court granted the request, over Moreno's objection, following a hearing on May 15, 2002 (i.e., after the remittitur). This appeal followed.

## DISCUSSION

■ Moreno challenges the trial court's restitution order on three grounds. He argues that neither the statute nor the case law upon which the court relied supports its decision; that by neglecting to request direct restitution at the sentencing hearing, or to object to the court's failure to impose it, the People waived their right to seek such an order thereafter; and that the restitution order exceeds the scope of the remittitur.

Section 1202.4 provides in part:

---

[2]The probation officer sent written notice to the family pursuant to section 1191.1, which states in part: "The victim of any crime, or the parents or guardians of the victim if the victim is a minor, or the next of kin of the victim if the victim has died, have the right to attend all sentencing proceedings under this chapter and shall be given adequate notice by the probation officer of all sentencing proceedings concerning the person who committed the crime."

Thus, it seems the officer's attempts to contact the family had more to do with the family's right to appear at the sentencing hearing and/or to express their views about the crime and the defendant than it did about their need for restitution. The family, in any event, had already submitted a claim to the VOC.

[3]We take judicial notice of the record in this prior appeal, particularly the probation officer's report and the transcript of the sentencing hearing. (Evid. Code, § 452.)

"(a)(1) It is the intent of the Legislature that a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime. [¶] . . . [¶]

"(3) The court, in addition to any other penalty provided or imposed under the law, shall order the defendant to pay both of the following:

"(A) A restitution fine in accordance with subdivision (b).

"(B) Restitution to the victim or victims, if any, in accordance with subdivision (f), which shall be enforceable as if the order were a civil judgment.

"(b) In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record. [¶] . . . [¶]

"(f) In every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court. The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record.

"(1) The defendant has the right to a hearing before a judge to dispute the determination of the amount of restitution. The court may modify the amount, on its own motion or on the motion of the district attorney, the victim or victims, or the defendant. If a motion is made for modification of a restitution order, the victim shall be notified of that motion at least 10 days prior to the proceeding held to decide the motion.

"(2) Determination of the amount of restitution ordered pursuant to this subdivision shall not be affected by the indemnification or subrogation rights of any third party. Restitution ordered pursuant to this subdivision shall be ordered to be deposited to the Restitution Fund to the extent that the victim, as defined in subdivision (k), has received assistance from the Victims of Crime Program pursuant to Article 1 (commencing with Section 13959) of Chapter 5 of Part 4 of Division 3 of Title 2 of the Government Code. [¶] . . . [¶]

"(4)(A) If, as a result of the defendant's conduct, the Restitution Fund has provided assistance to or on behalf of a victim or derivative victim pursuant to Article 1 (commencing with Section 13959) of Chapter 5 of Part 4 of Division 3 of Title 2 of the Government Code, the amount of assistance provided shall be presumed to be a direct result of the defendant's criminal conduct and shall be included in the amount of the restitution ordered."[4]

The People argued at the restitution hearing that section 1202.46 authorized the court to issue the postjudgment restitution order, i.e., to modify the original sentence to include direct restitution. This section states in its entirety: "Notwithstanding Section 1170,[5] when the economic losses of a victim cannot be ascertained at the time of sentencing pursuant to subdivision (f) of Section 1202.4, the court shall retain jurisdiction over a person subject to a restitution order for purposes of imposing or modifying restitution until such time as the losses may be determined. Nothing in this section shall be construed as prohibiting a victim, the district attorney, or a court on its own motion from requesting correction, at any time, of a sentence when the sentence is invalid due to the omission of a restitution order or fine without a finding of compelling and extraordinary reasons pursuant to Section 1202.4."

The sole issue at the restitution hearing was whether such an order would violate the state constitutional prohibition against double jeopardy. (Cal. Const., art. I, § 15.) The trial court, in reliance on *People v. Harvest* (2000) 84 Cal.App.4th 641 [101 Cal.Rptr.2d 135] (*Harvest*), concluded it would not because victim restitution is not a form of punishment. Since Moreno does not discuss the double jeopardy issue in his opening brief, we asked the parties to address it in supplemental briefing, along with two other issues: Had the court lost jurisdiction to modify Moreno's sentence? Was the court's order authorized in any case by the *second* part of section 1202.46? We begin with the statute.

---

[4]Section 1202.4 implements a directive in article I, section 28, subdivision (b) of the California Constitution, which was added by an initiative approved by the voters in 1982. This constitutional provision states: "It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer. [¶] Restitution shall be ordered from the convicted persons in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary. The Legislature shall adopt provisions to implement this section during the calendar year following adoption of this section."

[5]Section 1170 applies to determinate sentencing. Subdivision (d) of that section permits the trial court, within 120 days after a criminal defendant has been committed to the custody of the Department of Corrections, to recall the sentence and "resentence the defendant in the same manner as if he or she had not previously been sentenced, provided the new sentence, if any, is no greater than the initial sentence."

*Does Section 1202.46 Apply?*

Moreno argues in his opening brief that section 1202.46 did not authorize the trial court to order direct restitution because, referring to the *first* part of the statute, the losses could have been ascertained at the time of the original sentencing (and were not due only to the prosecutor's neglect). And, he notes further, the court in this case had not reserved the issue of direct restitution when it sentenced him initially.

It is this latter point, Moreno claims, that distinguishes this case from *Harvest*, where the appellate court, in addition to holding that victim restitution is not punishment for purposes of double jeopardy, held that the principles of waiver and estoppel did not foreclose a request for restitution made for the first time upon resentencing following an appeal. The trial court's retention of jurisdiction, however, was only one of several reasons the appellate court gave for its conclusion. (See *Harvest, supra,* 84 Cal.App.4th at p. 652.)

Moreno's principal argument against the application of section 1202.46 is based on *People v. Tillman* (2000) 22 Cal.4th 300 [92 Cal.Rptr.2d 741, 992 P.2d 1109] (*Tillman*). There, on the defendant's appeal from his criminal conviction, the People complained for the first time that the trial court had failed to impose a restitution fine and a parole revocation fine. A restitution fine is mandatory unless the court finds "compelling and extraordinary reasons" for not ordering it, and states those reasons on the record (which the trial court had not done). (§ 1202.4, subd. (b).) Further, if the court imposes a restitution fine, it must also impose a parole revocation fine in the same amount. (§ 1202.45.) Consequently, on the premise the two fines were mandatory, the Court of Appeal in *Tillman* amended the judgment to impose both fines in the amount of $200 each, the minimum permitted by the statutes. (*Tillman, supra,* 22 Cal.4th at pp. 301-302.)

The question before the Supreme Court was whether the People, by failing to raise the point at sentencing, had waived their objection to the trial court's omission. The court reasoned that the trial court's option to forgo imposition of a restitution fine for "compelling and extraordinary reasons" made the fine a discretionary sentencing choice subject to the waiver doctrine enunciated in *People v. Scott* (1994) 9 Cal.4th 331 [36 Cal.Rptr.2d 627, 885 P.2d 1040] (*Scott*) and *People v. Welch* (1993) 5 Cal.4th 228 [19 Cal.Rptr.2d 520, 851 P.2d 802] (*Welch*). (*Tillman, supra,* 22 Cal.4th at p. 302; cf. *People v. Talibdeen* (2002) 27 Cal.4th 1151 [119 Cal.Rptr.2d 922, 46 P.3d 388] [imposition of state and county penalties is mandatory]; *People v. Smith* (2001) 24 Cal.4th 849 [102 Cal.Rptr.2d 731, 14 P.3d 942] [imposition of

parole revocation fine is mandatory].) Both *Scott* and *Welch* applied the waiver rule to criminal defendants; in *Tillman* the court applied it as well to the People. (*Tillman, supra,* 22 Cal.4th at p. 303.) That is, an appellate court may not correct errors arising from the trial court's failure to make or articulate its discretionary sentencing choices if the complaining party— whether the defendant or the People—failed to object to the omission at trial. (*Ibid.*)

Moreno argues the decision whether to order victim restitution likewise is a discretionary sentencing choice because the trial court has the option to award less than the full amount of the victim's losses for "compelling and extraordinary reasons" stated on the record. (§ 1202.4, subd. (f).) "[I]t is clear," he asserts, "that if the trial court fails to provide restitution to victims or to reserve the issue, it has exercised its discretion to waive restitution while failing to state its reasons for doing so on the record." Perhaps he means to say we must presume the trial court elected not to order restitution, but simply neglected, or was not required, to state its reasons. (But see *People v. Martinez* (1998) 65 Cal.App.4th 1511, 1517-1518 [77 Cal.Rptr.2d 492] [presumption applies to silent record when trial court is *not* required to state findings; failure to object to omission in this situation constitutes waiver].)

Moreover, Moreno contends this extension of *Tillman* trumps the earlier decided cases cited by the People for the proposition that the trial court must *either* order victim restitution *or* state its reasons for not doing so on the record, but it has no discretion to do neither. This distinction between mandatory and discretionary sentencing issues, in addition to determining whether the issue can be waived by a failure to object at trial, also determines whether or not the resulting sentence is unauthorized.

In *People v. Rowland* (1997) 51 Cal.App.4th 1745 [60 Cal.Rptr.2d 351] (*Rowland*), for example, the defendant pleaded no contest to two counts of grand theft as part of a plea bargain that made no provision for victim restitution. When the victims appeared at the sentencing hearing seeking restitution, the court, believing it had the discretion to do so, denied the request. The victims then moved for modification of the sentence to include restitution on the ground it was mandatory under section 1202.4. The court agreed. The question then was whether the defendant would be prejudiced by a restitution order such that he should be allowed to withdraw his plea. The court found no prejudice, viz., it was not reasonably probable the defendant would have rejected the plea bargain had he been advised of the restitution order, and so it directed him to pay restitution totaling nearly $200,000 with interest. (*Rowland,* at pp. 1748-1750.)

On appeal, the defendant argued the trial court lacked the power to resentence him because the original sentence had been valid. He also challenged the court's no-prejudice finding. The Court of Appeal rejected both of these arguments and affirmed the judgment. (*Rowland, supra*, 51 Cal.App.4th at pp. 1750-1754.) As for the validity of the original sentence, the court said: "[V]ictim restitution is mandated by both the Constitution and section 1202.4. [Citations.] The only discretion retained by the trial court in this regard is in fixing the amount of the award. Although section 1202.4 mandates a sum which will fully reimburse the victim(s), the court can for 'clear and compelling reasons' award a lesser amount. However, in such a case the court must state the reasons for issuing a lesser award. [Citations.] Where the court fails to issue an award altogether, as here, the sentence is invalid. [Citation.]"[6] (*Rowland*, at p. 1751; see also *People v. Bernal* (2002) 101 Cal.App.4th 155, 164-165 [123 Cal.Rptr.2d 622] [sentence that fails to award victim restitution, or to award full restitution, is invalid, citing *Rowland*]; *People v. Valdez* (1994) 24 Cal.App.4th 1194, 1198-1204 [30 Cal.Rptr.2d 4] [sentence making no provision for victim restitution is unauthorized, and subject to correction notwithstanding prosecution's failure to object at sentencing].)

In his supplemental brief, Moreno maintains *Rowland* was "simply wrong" to conclude a sentence that fails to award restitution altogether is invalid. His point, as best we can discern, is that section 1202.4 (see former subd. (g), *ante*) requires the trial court to find and state compelling reasons only if it awards less than full restitution, but not if it awards no restitution at all. "Accordingly, a decision to waive restitution entirely is not invalid," he asserts. It seems to us nonsensical to suppose the Legislature intended to make it more burdensome on the trial court to award *some* restitution than to order none at all.

We believe in any case that the answer to the question before us lies not in *Tillman* but in the second sentence of section 1202.46. "Nothing in this section shall be construed as prohibiting a victim, the district attorney, or a court on its own motion from requesting correction, at any time, of a

---

[6]In 1995, at the time sentence was imposed in *Rowland*, the term "clear and compelling" appeared in subdivision (g) of section 1202.4.

"Restitution [to a victim of crime] ordered pursuant to subdivision (f) shall be imposed in the amount of the losses, as determined. The court shall order full restitution unless it finds clear and compelling reasons for not doing so, and states them on the record. Restitution shall, to the extent possible, be of a dollar amount that is sufficient to fully reimburse the victim or victims, for every determined economic loss incurred as the result of the defendant's criminal conduct . . . ." (Stats. 1994, ch. 1106, § 3, p. 6549.)

An amendment to section 1202.4 in 1996 changed the term to "compelling and extraordinary," and moved it to subdivision (f). (Stats. 1996, ch. 629, § 3.)

sentence when the sentence is invalid due to the omission of a restitution order or fine without a finding of compelling and extraordinary reasons pursuant to Section 1202.4." Section 1202.46 was enacted effective January 1, 2000, after the sentencing that was the subject of *Tillman.* (Stats. 1999, ch. 888, § 3.)

In his supplemental brief, Moreno simply reiterates his contention the introduction to the first part of section 1202.46 ("when the economic losses of a victim cannot be ascertained at the time of sentencing . . .") qualifies the *entire* statute, notwithstanding the introduction to the second part of the section ("Nothing in this section shall be construed as prohibiting . . ." the correction of an invalid sentence at any time). He asserts: "The second sentence of section 1202.46 provides that the failure to retain jurisdiction, order restitution or state reasons only results in an invalid sentence in cases in which the amount of restitution is not ascertainable at the time of sentencing."

We disagree. To begin with, the second part of section 1202.46 does not purport to define *when* a sentence is valid or invalid, it says only that a sentence that *is* invalid for lack of a restitution provision may be corrected at any time. And it seems obvious in any event that "Nothing in this section . . ." includes "nothing in the first part of this section." Thus, for purposes of the second part of section 1202.46, it makes no difference whether or not the victim's losses were ascertainable at the time of sentencing. Otherwise, every section 1202.46 hearing necessarily would require the court to make an "ascertainability" determination, much like the one it must make in statute of limitations situations where the discovery rule applies.

We conclude that, notwithstanding a trial court's failure to retain jurisdiction to impose or modify a restitution order, the second part of section 1202.46 permits the prosecutor, *at any time,* to request correction of a sentence that is *invalid* because, as in the present case, the court at the initial sentencing had neither ordered restitution nor found "compelling and extraordinary reasons" for ordering less than full restitution. The victim too may make such a request, or the trial court may act on its own motion. It follows that the court is not barred from correcting the invalid sentence simply because the prosecutor failed to object when it was imposed. An invalid or unauthorized sentence is subject to correction whenever it comes to the court's attention. (*People v. Dotson* (1997) 16 Cal.4th 547, 554, fn. 6 [66 Cal.Rptr.2d 423, 941 P.2d 56]; *Scott, supra,* 9 Cal.4th at p. 354; *People v. Karaman* (1992) 4 Cal.4th 335, 349, fn. 15 [14 Cal.Rptr.2d 801, 842 P.2d 100].)

Given this conclusion, it is not necessary for us to decide whether the restitution order violated the prohibition against double jeopardy by increasing the punishment for Moreno's offense. An invalid or unauthorized sentence "is subject to being set aside judicially and is no bar to the imposition of a proper judgment thereafter, even though it is more severe than the original unauthorized pronouncement." (*People v. Serrato* (1973) 9 Cal.3d 753, 764 [109 Cal.Rptr. 65, 512 P.2d 289], fn. omitted, disapproved on other grounds in *People v. Fosselman* (1983) 33 Cal.3d 572, 583, fn. 1 [189 Cal.Rptr. 855, 659 P.2d 1144].)

 Moreover, as we have already noted, the court in *Harvest, supra,* 84 Cal.App.4th 641, held that victim restitution is not a form of punishment for purposes of double jeopardy.[7] (*Harvest,* at p. 645; cf. *Hanson, supra,* 23 Cal.4th at pp. 360-363 [restitution fine is a form of punishment].)

Finally, our conclusion obviates Moreno's claim the trial court's restitution order exceeded the scope of the remittitur from the first appeal.

---

[7]However, it is not clear to us that the circumstances in *Harvest* presented a double jeopardy problem in the first place. The defendant in *Harvest* was convicted (in 1994, it seems) of one count of first degree murder with special circumstances, and one count of second degree murder. At sentencing, the trial court reserved the issue of victim restitution. The appellate court, in an opinion filed in 1998, reversed the second count and the special circumstances finding on the first count. It gave the prosecution the option on remand of retrying the second count or accepting a reduction of the charge to voluntary manslaughter. The prosecutor chose the latter course and the matter was set for resentencing. It was only then that the prosecutor asked the court to impose restitution. (The reasons for the delay are not clear.) The defendant opposed the request on several grounds: the request was untimely and exceeded the scope of the remand; the prosecutor should be estopped to seek restitution for having failed to do so back in 1994; and a restitution order would constitute double jeopardy. The trial court rejected these arguments and ordered the defendant to pay restitution to both victims. (*Harvest, supra,* 84 Cal.App.4th at p. 645.)

The appellate court, following the type of analysis utilized by the Supreme Court in *People v. Hanson* (2000) 23 Cal.4th 355, 360-363 [97 Cal.Rptr.2d 58, 1 P.3d 650] (*Hanson*) (finding that a restitution fine is a form of punishment), concluded direct victim restitution is not punishment for double jeopardy purposes. (*Harvest, supra,* 84 Cal.App.4th at p. 650.) The court also rejected the defendant's other two claims, but reduced the restitution award to one victim for lack of evidence. (*Id.* at pp. 651-653.)

Since the trial court in *Harvest* had "reserved the issue of victim restitution at the time it initially sentenced [the] defendant" (*Harvest, supra,* 84 Cal.App.4th at p. 651), we wonder whether the subsequent restitution order implicated double jeopardy principles at all, regardless of whether or not victim restitution is a form of punishment. In *Hanson,* by comparison, the trial court, after having originally imposed a $1,000 restitution fine, increased it to $10,000 on resentencing following an appeal. (*Hanson, supra,* 25 Cal.4th at pp. 357-358.) The problem in *Harvest,* it seems to us, was one of due process, given the five-year delay between the sentencing and the resentencing. (See *Harvest, supra,* 84 Cal.App.4th at pp. 657-658 (dis. opn. of Poché, J.).)

## DISPOSITION

The judgment is affirmed. The trial court is directed to prepare a new abstract of judgment to reflect the restitution order and to send a certified copy to the Department of Corrections.

Vartabedian, Acting P. J., and Gomes, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 9, 2003. George, C. J., and Brown, J., did not participate therein.